# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAAHDI COLEMAN, | CASE NO. 1:06-cv-00836-AWI-WMW PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF CERTAIN CLAIMS |
| v. | |
| DERRAL G. ADAMS, et al., | (Doc. 17) |
| Defendants. | |

## Findings and Recommendations Following Screening of Complaint

Plaintiff Saahdi Coleman ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is in the custody of the California Department of Corrections and Rehabilitation and is incarcerated at Folsom State Prison in Represa, California. However the events in his complaint took place while Plaintiff was incarcerated at Corcoran Substance Abuse and Treatment Facility in Corcoran, California ("CSTAF"). Plaintiff is suing under section 1983 for the violation of his rights under the Eighth and Fourteenth Amendments. Plaintiff raises supplemental state law claims as well[1]. Plaintiff names Derral G. Adams, M. Divine, G. Martinez, J. H. Close, S. Suryadevara, Kyle, Nguyen, Deering, A. Quezada, Smith, and Vierra as defendants. For the reasons set forth below, the court recommends that Plaintiff's Fourth and Fourteenth Amendment Claims be dismissed.

///

---

[1] The court refrains from screening Plaintiff's state law claims as it is not yet clear that the court will exercise supplemental jurisdiction over them.

1

**I.      Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. P. 8(a). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

**II.     Background**

    **A.      Procedural Background**

Plaintiff filed the original complaint in this action on June 29, 2006. (Doc. #1.) Plaintiff, on his own initiative and not by order from the court, filed an amended complaint ("First Amended Complaint") on April 14, 2008. (Doc. #10.) The court screened Plaintiff's First Amended Complaint on March 31, 2009. (Doc. #16.) The court found that only some of Plaintiff's claims were cognizable and ordered Plaintiff either to file an amended complaint or proceed only on the claims found to be cognizable. Plaintiff opted to file an amended complaint. Plaintiff filed his

///

Second Amended Complaint on April 14, 2009. (Doc. #17.) This action proceeds on Plaintiff's Second Amended Complaint.

### B. Factual Background

Plaintiff alleges that Defendants' deficient medical treatment of Plaintiff's vision impairment amounted to a violation of the Cruel and Unusual Punishments Clause of the Eighth Amendment. Plaintiff was given a medical screening when he arrived at CSATF in September 2003. Plaintiff informed medical staff of a pre-existing vision problem. Plaintiff was placed on the specialty clinic waiting list. Plaintiff received a priority ducat from the specialty clinic for December 3, 2003. However, Plaintiff was not taken to the specialty clinic. Plaintiff filed an "Inmate Request for Interview" and a "Health Care Services Request" form but did not receive a response. On December 29, 2003, Plaintiff filed an "Inmate/Parolee Appeal" form.

On January 6, 2004, Plaintiff fell while climbing off his top bunk due to his vision problem. Plaintiff was sent to the med line and was treated by Defendant Kyle. Defendant Kyle noticed a contusion and swelling on Plaintiff's right hand and prescribed pain medication and ordered an x-ray. Plaintiff filed a second "Inmate/Parolee Appeal" requesting medical treatment. On January 28, 2004, Plaintiff was interviewed regarding his appeal by Defendant Kyle. Plaintiff was given an eye exam for his vision problem. Defendant Kyle determined that it was likely that Plaintiff would need glasses to correct his vision problem. Defendant Kyle made a specialty clinic appointment for Plaintiff.

On January 30, 2004, Plaintiff fell down a flight of stairs causing injury to his neck, back, ankle, and hand. Plaintiff was treated at the Corcoran District Hospital and placed in a neck brace. An ankle wrap was ordered for Plaintiff and he was prescribed pain medication. Upon Plaintiff's return to CSTAF, he was examined by a nurse who informed Plaintiff that he would receive temporary pain medication and would be placed on the med line list. The nurse contacted Defendant Vierra (medical technical assistant, "MTA") and informed him that Plaintiff sustained injuries to his neck, back, ankle, and hand. Defendant Vierra was told to issue Plaintiff temporary pain medication and to place Plaintiff on the med line list for February 2, 2004.

///

On February 2, 2004, Plaintiff filed another "Inmate/Parolee Appeal" explaining his accident and complaining about the inadequate medical care following his treatment at Corcoran District Hospital. On February 4, 2004, Plaintiff informed the MTA at morning pill call that he had not received any pain medication after his accident. Plaintiff informed medical staff that he had been unable to move for the past 3 days. Plaintiff was told that he would receive temporary pain medication immediately.

On February 6, 2004, Plaintiff was examined by Defendant Kyle who again ordered pain medication and an ankle wrap. Plaintiff informed Defendant Kyle that his ankle hurt more every time Plaintiff climbed off his top bunk. On February 8, 2004, Plaintiff filed another "Inmate/Parolee Appeal" complaining about his treatment after the accident. Plaintiff alleged that his ankle injury was not treated and he was placed on the med line list for almost a week. Defendant Kyle observed that Plaintiff's ankle injury had gotten worse and was personally informed that Plaintiff's living conditions were unsafe due to his vision problems. Defendant Kyle told Plaintiff that he was not allowed to write a chrono for Plaintiff to receive a lower bunk. Plaintiff alleges that this was a lie. Plaintiff requested to be treated by a doctor who was authorized to write chronos.

On February 16, 2004, Plaintiff filed another "Inmate/Parolee Appeal" complaining that his vision problem was getting progressively worse and that Plaintiff was experiencing migraines. On February 20, 2004, Plaintiff was examined by Defendant Deering. Plaintiff was given an eye exam. Defendant Deering told Plaintiff that his vision problems were either not correctable or were the result of stress. Defendant Deering refused to issue Plaintiff a lower bunk chrono.

On February 22, 2004, Plaintiff filed an "Inmate/Parolee Appeal" complaining that he had not received adequate medical treatment. On February 27, 2004, Plaintiff was interviewed by medical staff. Plaintiff requested treatment by the specialty clinic. Defendant Smith partially granted Plaintiff's appeal by placing Plaintiff on the med line list. On March 11, 2004, Plaintiff continued his appeal and complained that his medical problems are not being addressed and an investigation of medical staff had not been conducted.

On March 19, 2004, Plaintiff was interviewed by Defendant Quezada. Defendant Quezada unsuccessfully attempted to contact the specialty clinic. Plaintiff was placed on the optometry list

and x-rays for Plaintiff's right hand were ordered for the second time. Plaintiff requested a lower bunk chrono, as there was no treatment available for his vision problems. Defendant Quezada refused to issue Plaintiff a lower bunk chrono. On March 20, 2004, Defendant Quezada partially granted Plaintiff's "Inmate/Parolee Appeal". Defendant Quezada stated that there was a significant time delay for Plaintiff's visit to the optometrist because the institution does not have an optometrist on contract.

On March 21, 2004, Plaintiff filed an "Inmate Request For Interview" complaining that he had filed numerous requests that had gone unanswered and requested treatment. The response stated that there was no optometrist, and therefore there was no treatment. On March 25, 2004, Defendant Divine answered Plaintiff's "Inmate/Parolee Appeal". Defendant Divine informed Plaintiff that he received appropriate treatment for his condition. Plaintiff alleges that Defendant Divine was aware of Plaintiff's unsafe living conditions.

On April 5, 2004, Plaintiff continued his appeal. Plaintiff informed medical staff that he had finally received x-rays on his hand. Plaintiff's hand healed with a deformity. Plaintiff continued to complain about the failure to treat his vision problem.

On April 20, 2004, Plaintiff fell off his top bunk due to his vision problem. Plaintiff was treated by medical staff, prescribed pain medication, and placed on the doctor's list for a follow-up. On April 23, 2004, Plaintiff was examined by medical staff. X-rays of Plaintiff's ankle were ordered. On April 26, 2004, Plaintiff filed another "Inmate/Parolee Appeal". Plaintiff reported his April 20 accident and informed prison officials that his living conditions were unsafe due to his vision problem.

On May 4, 2004, Defendant Nguyen and Martinez answered Plaintiff's appeal. One of Plaintiff's appeals was granted in part, but Plaintiff did not receive treatment for his vision problem. On May 5, 2004, Plaintiff's appeal regarding the April 20 accident was denied. Plaintiff was told that the institution and the cells are pre-approved building designs. Plaintiff was told that if he has medical needs or seeks a medical chrono he must request to see a doctor and be more specific in his requests. Plaintiff was told that everyone is accountable for their actions.

///

On May 7, 2004, Defendant Close answered one of Plaintiff's appeals. Plaintiff was scheduled for an optometry visit for May 24, 2004. On May 24, 2004, Defendant Close partially granted another one of Plaintiff's appeals. Plaintiff was scheduled for the specialty clinic on May 26, 2004. Plaintiff alleges that Defendant Close was aware of Plaintiff's unsafe living conditions. On May 23, 2004, Plaintiff continued one of his appeals at the director's level. Plaintiff complained that he experienced an eight month delay for his optometry visit.

On June 2, 2004, Plaintiff was examined by the optometrist at CSTAF. Plaintiff was prescribed and ordered eye glasses. Plaintiff continued to pursue his appeals complaining about his medical treatment.

On June 23, 2004, Plaintiff was examined by Defendant Smith. Plaintiff was treated for pain in his ankle. On July 1, 2004, Plaintiff was billed by the specialty clinic for eye glasses. On July 7, 2004, Defendant Suryadevara responded to one of Plaintiff's appeals. Plaintiff was treated by the specialty clinic and received his eye glasses. On July 18, 2004, Plaintiff filed another "Inmate/Parolee Appeal" complaining about the unsafe living conditions for inmates with vision problems.

On August 4, 2004, Plaintiff was examined by the orthopedic specialty clinic. Plaintiff was told that there was a slight deformity in Plaintiff's right hand. Plaintiff received a prescription for ongoing pain. On September 3, 2004, Plaintiff filed a "Health Care Service Request" due to an increase in back and hand pain. Plaintiff was treated by a nurse on September 7, 2004. Plaintiff was seen by a doctor on September 17, 2004. Plaintiff was again prescribed pain medication.

On December 20, 2004, Plaintiff filed another "Health Care Service Request" due to continued vision problems, back pain, and neck pain. On December 31, 2004, Plaintiff was treated and again prescribed pain medication.

**III. Discussion**

    **A.  Eighth Amendment Claims - Deliberate Indifference To Medical Needs**

Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment of the U.S. Constitution (Plaintiff's first and third causes of action). The Eighth Amendment prohibits the imposition of cruel and unusual punishments and

"embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968)). A prison official violates the Eighth Amendment only when two requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious", Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991), and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind", Id. (quoting Wilson, 501 U.S. at 298). The objective requirement that the deprivation be "sufficiently serious" is met where the prison official's act or omission results in the denial of "the minimal civilized measure of life's necessities". Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). The subjective requirement that the prison official has a "sufficiently culpable state of mind" is met where the prison official acts with "deliberate indifference" to inmate health or safety. Id. (quoting Wilson, 501 U.S. at 302-303). A prison official acts with deliberate indifference when he/she "knows of and disregards an excessive risk to inmate health or safety". Id. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

"[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Estelle v. Gamble, 429 U.S. 97, 105 (1976). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (quoting Estelle, 429 U.S. at 104). Delay of medical treatment can amount to deliberate indifference. See Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); Clement v. Gomez, 298 F.3d 898, 905 (9th Cir. 2002); Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc); Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); McGuckin, 974 F.2d at 1059; Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988). However, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97,

106 (1976). Isolated occurrences of neglect do not constitute deliberate indifference to serious medical needs. See Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992); O'Loughlin v. Doe, 920 F.2d 614, 617 (9th Cir. 1990).

Plaintiff alleges that he had serious medical needs with respect to his vision problems. Accepting Plaintiff's allegations as true, without treatment or accommodation, his vision problems were so severe that he was exposed to excessive risks to his safety because he slept in an upper bunk that had no guard rail or ladder-access. Plaintiff attributes two incidents when he fell off his bunk and suffered injuries to his vision impairment. Plaintiff evidently was also at risk of suffering serious injuries from falling down the stairs at the prison. Thus, Plaintiff contends that Defendants acted with deliberate indifference because they were informed that Plaintiff faced a risk of serious injury from falling off his bunk and Defendants should have either provided eye glasses or a lower bunk chrono to remedy the risk of injury. Plaintiff also alleges that he was deprived of pain medication which caused him to suffer unnecessary and excruciating pain.

Plaintiff alleges that Defendant Vierra was informed of Plaintiff's injuries and was instructed to provide Plaintiff with temporary pain medication and to place Plaintiff on the med line list for follow-up treatment. Plaintiff alleges that Defendant Vierra failed to provide Plaintiff with pain medication and failed to place Plaintiff on the med line list. Plaintiff alleges that as a result of Defendant Vierra's actions, Plaintiff experienced unnecessary and excruciating pain and the injury to Plaintiff's ankle worsened. Plaintiff states a cognizable claim for deliberate indifference to his serious medical needs against Defendant Vierra.

Plaintiff alleges that Defendant Smith was informed of Plaintiff's vision problems and Plaintiff's unsafe living conditions due to his vision problems. Plaintiff alleges that although Defendant Smith placed Plaintiff on the med line list and scheduled Plaintiff to visit the optometry clinic, Defendant Smith disregarded Plaintiff's unsafe living conditions. Plaintiff alleges that Defendant Smith "had the authority, responsibility, and means to cure Plaintiff's unsafe living conditions." (Compl. ¶ 75.) Plaintiff states a cognizable claim for deliberate indifference to his serious medical needs against Defendant Smith.

///

Plaintiff alleges that Defendants Deering, Quezada, and Close were personally informed of Plaintiff's unmet medical needs and unsafe living conditions. Plaintiff requested a lower bunk chrono, which Defendants Deering, Quezada, and Close all denied. Plaintiff states a cognizable claim for deliberate indifference to his serious medical needs against Defendant Deering, Quezada, and Close.

Plaintiff alleges that Defendant Nguyen, Divine, and Martinez were personally informed of Plaintiff's medical needs and unsafe living conditions through the inmate appeal system. Plaintiff alleges that Defendants Nguyen, Divine, and Martinez denied Plaintiff's requests for medical treatment and Plaintiff continued to be exposed to the unsafe living conditions. Plaintiff states a cognizable claim for deliberate indifference to his serious medical needs against Defendants Nguyen, Divine, and Martinez.

Plaintiff alleges that Defendant Kyle was personally informed of Plaintiff's medical problems and unsafe living conditions. Plaintiff requested a lower bunk chrono from Defendant Kyle but Defendant Kyle refused to give Plaintiff one, stating that he was not authorized to issue lower bunk chronos. Plaintiff alleges that Defendant Kyle lied and actually did have the authority to issue Plaintiff a lower bunk chrono and cure the unsafe living conditions. Plaintiff states a cognizable claim against Defendant Kyle.

Plaintiff alleges that Defendant Adams was personally informed of Plaintiff's medical treatment, unsafe living conditions, and personal injuries through the inmate appeal system. Defendant Adams had first hand knowledge of his subordinates actions and Plaintiff's medical needs but failed to take corrective measures. Plaintiff states a cognizable claim against Defendant Adams.

Plaintiff alleges that Defendant Suryadevara had personal knowledge of Plaintiff's medical needs and "medically negligent treatment" through the inmate appeal system. Defendant Suryadevara failed to take corrective measures. Plaintiff states a cognizable claim against Defendant Suryadevara.[2]

---

[2] Plaintiff states that Defendant Suryadevara is liable under his fourth cause of action for "Supervisory Liability". (Compl. ¶ 140-44.) Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle

### B. Fourth Amendment Claims

Plaintiff alleges that he received cruel and unusual punishment in violation of the Fourth Amendment of the U.S. Constitution (Plaintiff's third cause of action). The Fourth Amendment bears no relation to Plaintiff's claims of cruel and unusual punishment. Plaintiff's claim should proceed as an Eighth Amendment claim. See supra Part III.A. Plaintiff fails to state a claim under the Fourth Amendment. As this is the second time Plaintiff has been informed of the deficiencies of his Fourth Amendment claim, the court recommends that Plaintiff's Fourth Amendment claim be dismissed.

### C. Fourteenth Amendment Claims

Plaintiff alleges that he received cruel and unusual punishment in violation of the Fourteenth Amendment of the U.S. Constitution (Plaintiff's third cause of action). Construing Plaintiff's Fourteenth Amendment cruel and unusual punishments claim as a substantive due process claim, Plaintiff is again informed that "where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims." Patel v. Penman, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and brackets omitted). Plaintiff is explicitly protected from cruel and unusual punishment under the Eighth Amendment. Therefore, Plaintiff's claim should proceed as an Eighth Amendment claim, not a Fourteenth Amendment claim. See supra Part III.A. Plaintiff fails to state a claim under the Fourteenth Amendment. As this is the second time Plaintiff has been informed of the deficiencies of his Fourteenth Amendment claim, the court recommends that Plaintiff's Fourteenth Amendment claim be dismissed.

///
///

---

v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). Since there is no "supervisory liability" in section 1983 actions, Defendant Suryadevara cannot be liable under a respondeat superior theory. However, liberally construed, Plaintiff has alleged that Defendant Suryadevara had sufficient participation in the constitutional violations to hold him liable for his own actions.

## IV. Conclusion and Recommendation

Plaintiff's complaint states cognizable claims against Defendants Adams, Divine, Martinez, Close, Suryadevara, Kyle, Nguyen, Deering, Quezada, Smith, and Vierra for deliberate indifference to his medical needs. However, Plaintiff does not state cognizable claims for violations of the Fourth or Fourteenth Amendment. Plaintiff was provided with the opportunity to amend and his Second Amended Complaint failed to remedy the deficiencies with his Fourth and Fourteenth Amendment claims. The court finds that the deficiencies with Plaintiff's Fourth and Fourteenth Amendment claims are not curable by further amendment of his complaint. Accordingly, it is HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's Second Amended Complaint, filed on April 14, 2009, against Defendants Adams, Divine, Martinez, Close, Suryadevara, Kyle, Nguyen, Deering, Quezada, Smith, and Vierra for violation of the Eighth Amendment as well as Plaintiff's state law claims against them; and

2. Plaintiff's Fourth Amendment claim and Fourteenth Amendment claim be dismissed for failure to state a claim

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **fifteen (15) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   May 6, 2009**              /s/  **William M. Wunderlich**
                                      UNITED STATES MAGISTRATE JUDGE