1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

10

11

SAAHDI COLEMAN,

          Plaintiff,

  v.

DERRAL G. ADAMS, et al.

          Defendants.

Case No.  1:06-cv-00836-AWI-SAB

FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED

(ECF NO. 70)

OBJECTIONS DUE WITHIN 21 DAYS

17

      Plaintiff Saahdi Coleman ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  On October 6, 2011, Defendants Adams, Nguyen, Martinez, Suryadevara, Smith, Vierra, Kyle and Divine[1] ("Defendants") filed a motion for summary judgment.  (ECF No. 70.)  Plaintiff filed his opposition to Defendants' motion for summary judgment on March 9, 2012.[2]  (ECF Nos. 75-79.)  Defendants filed their reply on March 26, 2012.  (ECF No. 82.)

      This matter was submitted to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 303 for findings and recommendations to the District Court.  For the reasons set forth below, the undersigned recommends that Defendants' motion for summary

---

[1] Defendants Deering, Close and Quezada have not yet made an appearance in this case.

[2] On August 22, 2012, the Court deemed Plaintiff's opposition as timely filed.  (ECF No. 89.)

1    judgment be granted.

2    **I.**

3    **BACKGROUND**

4    This action proceeds on Plaintiff's Second Amended Complaint ("SAC"), filed on April

5    14, 2009.[3]  (ECF No. 17.)  Plaintiff raises claims against Defendants under 42 U.S.C. § 1983 for

6    the violation of Plaintiff's Eight Amendment rights.  Plaintiff also raises related state law claims

7    against Defendants.   Plaintiff alleges that Defendants were deliberately indifferent toward

8    Plaintiff's serious medical needs.

9       **A.      Undisputed Facts**

10    At the time relevant to this case, Plaintiff Saahdi Coleman was an inmate in the custody of

11    the California Department of Corrections and Rehabilitation ("CDCR") at California Substance

12    Abuse Treatment Facility and State Prison ("SATF").   (Defs.' Statement of Undisputed Facts

13    ("Defs.' SUF") ¶ 1.)  At all times relevant to this case, Defendants were employed by CDCR and

14    assigned to SATF.  (Defs.' SUF ¶ 2.)

15    On December 29, 2003, Plaintiff filed an administrative appeal (Log No. 04-00452)

16    complaining that he had not received medical attention and that he had "incurred other injuries as

17    a result of not being able to see very well."  (Defs.' SUF ¶ 3.)

18       1.    Facts Pertaining To Defendants Kyle

19    On January 6, 2004, Defendant D. Kyle, M.D. ("Kyle") examined Plaintiff and prescribed

20    fiber tabs, ranitidine (also known as Zantac), ibuprofen, and ordered an x-ray of Plaintiff's right

21    hand. (Defs.' SUF ¶ 5.)

22    On January 28, 2004, Kyle examined Plaintiff in response to his administrative appeal

23    (Log No. 04-00452).  (Defs.' SUF ¶ 6.)  Kyle conducted a visual acuity test, which showed that

24    Plaintiff's right eye tested at 20/50, his left eye tested at 20/70, and both eyes together tested

25    20/50.   (Defs.' SUF ¶ 7.)   Kyle determined that it was likely Plaintiff should be fitted with

26    _____

27    [3] Plaintiff lodged a third amended complaint on January 11, 2011.  (ECF No. 61.)  However,
Plaintiff never requested leave to file a third amended complaint and was never given leave to file
a third amended complaint.  Accordingly, it will be disregarded.  See Fed. R. Civ. Proc. 15(a)

28    (requiring the opposing party's written consent or leave of court to amend).

glasses.  (Defs.' SUF ¶ 8.)

On February 6, 2004, Kyle examined Plaintiff, who claimed that he had fallen down stairs and injured his neck and left ankle.  (Defs.' SUF ¶ 21.)  Kyle's examination showed that Plaintiff had a strained neck and bruised left ankle.  (Defs.' SUF ¶ 22.)  Kyle prescribed Plaintiff acetaminophen and indomethacin (also known as Indocin) for pain, and told Plaintiff to continue wearing a c-collar on his neck if it was helpful, and ordered him a wrap for his ankle.  (Defs.' SUF ¶ 23.)

Other than the January 6, 2004, January 28, 2004 and February 6, 2004 visits, Kyle did not examine or treat Plaintiff regarding his medical complaints of falling down or vision problems.  (Defs.' SUF ¶ 30.)

2.   Facts Pertaining To Defendant Nguyen

On January 30, 2004, Defendant Nguyen, M.D. ("Nguyen") examined Plaintiff for a cervical spine injury he allegedly suffered when he fell down a set of stairs, and requested that Plaintiff be transferred to Corcoran District Hospital for x-rays and evaluation.  (Defs.' SUF ¶ 10.)  Nguyen did not treat Plaintiff upon his return from the hospital on January 30, 2004, and had no other involvement with Plaintiff's medical treatment until the following April.  (Defs.' SUF ¶ 11.)

On March 22, 2004, Plaintiff received an x-ray of his right hand.  (Defs.' SUF ¶ 55.)  On April 23, 2004, Nguyen examined Plaintiff in response to his administrative appeal (Log No. 04-00995), where Plaintiff complained about his medical treatment.  (Defs.' SUF ¶ 56.)  Nguyen prescribed more ibuprofen, ordered an x-ray of the left ankle, and requested a referral to receive a consultation with the orthopedic specialist.  (Defs.' SUF ¶ 57.)  By the time Nguyen examined Plaintiff, his eyes had been checked by Dr. Deering, whose test on Plaintiff for diplopia (double vision) came back normal.  (Defs.' SUF ¶ 58.)  For Plaintiff's complaints of blurry vision, Nguyen referred Plaintiff for an optometrist appointment.  (Defs.' SUF ¶ 59.)

3.   Facts Pertaining To Defendant Vierra

Plaintiff alleges that an on-call nurse at SATF's emergency department called Defendant Vierra ("Vierra") on the phone on January 30, 2004, and verbally ordered Vierra to administer

3

pain medication to Plaintiff and place him on the 'medicine list' for February 2, 2004.[4]  (Defs.' SUF ¶ 14.)   The parties dispute whether Vierra actually received this call and whether Vierra deliberately refused to administer pain medication to Plaintiff.

4.      Facts Pertaining To Defendant Smith

On February 27, 2004, Defendant Smith ("Smith"), a registered nurse, responded to Plaintiff's inmate appeal (Log No. 04-00995) at the informal level, wherein Plaintiff requested: (1) to be seen by a qualified physician who could write him a chrono[5]; (2) for his medical needs to be evaluated; and (3) for an investigation of the facility-C medical department.  (Defs.' SUF ¶ 31.)  Smith partially granted the appeal (Log No. 04-00995) at the informal level by placing Plaintiff on the doctor's list to have his medical needs evaluated.  (Defs.' SUF ¶ 32.)

On February 27, 2004, Smith responded to another of Plaintiff's inmate appeals (that was not assigned a log number) wherein Plaintiff asked to be treated for his vision problem and "migraine headaches" and asked for the treatment process to be sped up.  (Defs.' SUF ¶ 35.)  Smith granted Plaintiff's appeal as Plaintiff had been placed on a waiting list to see an optometrist.  (Defs.' SUF ¶ 36.)  Smith had no control over when an optometrist would become available.  (Defs.' SUF ¶ 37.)

5.      Facts Pertaining To Defendant Divine

On February 2, 2004, Plaintiff filed an appeal (Log No. 04-00712) complaining about his treatment after he fell down a set of stairs on January 30, 2004.  (Defs.' SUF ¶ 41.)  Plaintiff told medical staff about his vision problem, but they deemed it not an emergency and failed to treat him.  (Defs.' SUF ¶ 41.)

On February 20, 2004, Dr. Deering[6], an ophthalmologist, examined Plaintiff in response to his appeal (Log No. 04-00712).  (Defs.' SUF ¶ 42.)  At that time, Dr. Deering performed an

---

[4] Plaintiff qualifies Defendants' statement by contending that Vierra was instructed to administer "temporary" pain medication that does not require a doctor's order.  (Pl.'s Resp. to Defs.' SUF 6:23-7:1.)

[5] Plaintiff sought a doctor's order, or "chrono," requiring prison staff to give Plaintiff a lower bunk.

[6] Dr. Deering was named as a defendant in this action, but has not yet made an appearance.  It appears that Dr. Deering has not yet been served and may be deceased.  (See ECF No. 90.)

eye exam for diplopia (double vision), which was normal.  (Defs.' SUF ¶ 43.)

On March 23, 2004, Dr. Deering partially granted Plaintiff's appeal (Log No. 04-00712) because he found that Plaintiff had received appropriate medical treatment for his condition. (Defs.' SUF ¶ 44.)  On March 25, 2004, Defendant Divine ("Divine"), an Acting Correctional Health Services Administrator, reviewed Plaintiff's administrative appeal (Log No. 04-00712), which had been responded to by Dr. Deering.  (Defs.' SUF ¶ 45.)  The scope of Divine's review of Plaintiff's appeal was limited to determining whether he received adequate due process, and did not require Divine to review the grievances to assess the veracity of Plaintiff's allegations or the quality of the medical care provided to him.  (Defs.' SUF ¶ 46.)  Divine signed off on the appeal because Dr. Deering had addressed the action requested and signed and dated the appeal. (Defs.' SUF ¶ 47.)

On March 19, 2004, Plaintiff was interviewed by Dr. Quezada[7] at the first level of review in response to one of Plaintiff's administrative appeals (Log No. 04-00452), wherein Dr. Quezada explained that Plaintiff was scheduled for an optometry appointment, but failed to show due to a lack of custody escort, which was not the fault of the medical department.  (Defs.' SUF ¶ 49.)  Dr. Quezada also explained that the optometrist evaluations were delayed because the institution did not have an optometrist on contract at that time, but that Plaintiff's appeal was considered partially granted because Plaintiff would be seen by an optometrist as soon as one became available.  (Defs.' SUF ¶ 50.)  Divine signed off on the appeal (Log No. 04-00452) because Dr. Quezada had addressed the action requested and signed and dated the appeal.  (Defs.' SUF ¶ 51.) Divine played no role in Plaintiff's medical care or treatment at any time relevant to this lawsuit. (Defs.' SUF ¶ 53.)

6.    Facts Pertaining To Defendant Martinez

On May 4, 2004, based on his examination of Plaintiff, Nguyen partially granted Plaintiff's appeal (Log No. 04-00995) because Nguyen determined that Plaintiff was received continuing treatment including medication and a specialty referral to see an optometrist.  (Defs.'

---

[7] Dr. Quezada was named as a defendant in this action, but has not yet made an appearance.  It appears that Dr. Quezada has not yet been served.  (See ECF No. 93.)

SUF ¶ 67.)  On May 4, 2004, Defendant Martinez ("Martinez"), a Correctional Health Services Administrator, reviewed Plaintiff's administrative appeal (Log No. 04-00995), which had been responded to by Nguyen.  (Defs.' SUF ¶ 68.)  The scope of Martinez's review was limited to determining whether Plaintiff received adequate due process, and did not require her to review Plaintiff's grievances to assess the veracity of Plaintiff's allegations or the quality of his medical care, since Martinez was not medically qualified to do so.  (Defs.' SUF ¶ 69.)  Martinez played no role in Plaintiff's medical care or treatment.  (Defs.' SUF ¶ 72.)

       7.     Facts Pertaining To Defendants Suryadevara and Adams

At his deposition on April 28, 2011, Plaintiff stated that he has no claims against Defendant Suryadevara.  (Defs.' SUF ¶ 75.)  At his deposition on April 28, 2011, Plaintiff stated that he listed Defendant Adams as a defendant because "he's the warden and he's over everything at the prison so I figured he should have some kind of knowledge, some kind of oversight of what was going on."  (Defs.' SUF ¶ 76.)

       8.     Resolution Of Plaintiff's Vision Problems

On June 2, 2004, Plaintiff was examined by an optometrist and prescribed glasses.  (Defs.' SUF ¶ 74.)

**B.    Disputed Facts**

The following facts are disputed[8]:

- Whether Kyle was aware that Plaintiff's vision problem constituted an emergency, or placed Plaintiff at risk of future injury.  (Defs.' SUF ¶ 8, 9, 25, 26; Pl.'s Resp. to Defs.' SUF 4:11-20, 4:28-5:14, 12:18-13:1, 13:10-19.)

- Whether there was any medical indication that a lower bunk chrono was necessary for Plaintiff's health or safety.  (Defs.' SUF ¶ 24, 25, 27, 28; Pl.'s Resp. to Defs.' SUF 12:4-13, 12:18-13:1, 13:25-14:10, 14:16-18.)

- Whether, during the times Kyle examined Plaintiff and reviewed his medication record,

---

[8] Plaintiff raised other disputes over Defendants' statement of facts which are not set forth below because they are not material to the Court's analysis of Defendants' motion for summary judgment.

Kyle ensured Plaintiff received appropriate medical treatment.  (Defs.' SUF ¶ 29; Pl.'s Resp. to Defs.' SUF 14:24-15:4.)

- Whether Nguyen believed Plaintiff's complaints of blurry vision constituted an emergency or whether Nguyen believed it placed Plaintiff at risk for any future injury. (Defs.' SUF ¶ 60, 62, 63; Pl.'s Resp. to Defs.' SUF 25:11-21, 26:22-27:8, 27:17-26.)

- Whether, during his examination of Plaintiff, Nguyen believed there was a medical indication that a lower bunk chrono was necessary for Plaintiff's health or safety.  (Defs.' SUF ¶ 61, 64, 65; Pl.'s Resp. to Defs.' SUF 25:28-26:14, 28:4-17, 28:23-29:5.)

- Whether, during the times Nguyen examined Plaintiff and reviewed his medication record, Nguyen ensured Plaintiff received appropriate medical treatment.  (Defs.' SUF ¶ 66; Pl.'s Resp. to Defs.' SUF 29:11-17.)

- Whether Vierra prevented Plaintiff from receiving medical treatment for any injuries, intentionally caused Plaintiff any pain, suffering, injury or harm, or otherwise caused any delay in care or treatment for Plaintiff.  (Defs.' SUF ¶ 18, 19, 20; Pl's Resp. to Defs.' SUF 8:10-27, 9:4-10:3, 10:9-23.)

- Whether, in reviewing Plaintiff's appeal (Log No. 04-00995), Smith believed that Plaintiff's health or safety was at risk, or that the doctor's assessment of Plaintiff's condition was wrong.  (Defs.' SUF ¶ 34, 39; Pl.'s Resp. to Defs.' SUF 16:14-18 18:15-22.)

- Whether Smith believed that Plaintiff's housing on a top bunk constituted a danger to Plaintiff's health or safety.  (Defs.' SUF ¶ 38; Pl.'s Resp. to Defs.' SUF 17:20-18:8.)

- Whether Divine ever knowingly or intentionally caused Plaintiff any pain, suffering, or injury of any kind, or was aware of anyone who ever refused to provide Plaintiff any necessary medical care or treatment.  (Defs.' SUF ¶ 48, 52, 54; Pl.'s Resp. to Defs.' SUF 21:9-16, 22:17-28, 23:13-21.)

- Whether Martinez ever knowingly or intentionally caused Plaintiff any pain, suffering, or injury of any kind or was aware of anyone who ever refused to provide Plaintiff any necessary medical care or treatment.  (Defs.' SUF ¶ 71, 73; Pl.'s Resp. to Defs.' SUF

7

1     31:1-7, 31:20-32:1.)

2         **C.      Defendants' Motion For Summary Judgment**

3         In their motion for summary judgment, Defendants argue that (1) the undisputed evidence

4    shows that Defendants were not deliberately indifferent toward Plaintiff's medical needs or

5    toward an excessive risk to Plaintiff's safety (Mem. Of P. & A. in Supp. Of Defs.' Mot. For

6    Summ. J. ("Defs.' MSJ") 7:5-13:23); (2) Defendants are entitled to qualified immunity (Defs.'

7    MSJ 13:24-14:18); and (3) Plaintiff's state law claims are untimely (Defs.' MSJ 14:19-15:27).

8                                        **II.**

9              **LEGAL STANDARDS FOR MOTIONS FOR SUMMARY JUDGMENT**

10        Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if

11   the movant shows that there is no genuine dispute as to any material fact and the movant is

12   entitled to judgment as a matter of law."  Federal Rule of Civil Procedure 56(a).   "[A] party

13   seeking summary judgment always bears the initial responsibility of informing the district court

14   of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers

15   to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

16   demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S.

17   317, 323 (1986).

18        Entry of summary judgment is appropriate "against a party who fails to make a showing

19   sufficient to establish the existence of an element essential to that party's case, and on which that

20   party will bear the burden of proof at trial."  Id. at 322.   "A moving party without the ultimate

21   burden of persuasion at trial-usually, but not always, a defendant-has both the initial burden of

22   production and the ultimate burden of persuasion on a motion for summary judgment."  Nissan

23   Fire & Marine Ins. Co. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).  "In order

24   to carry its burden of production, the moving party must either produce evidence negating an

25   essential element of the nonmoving party's claim or defense or show that the nonmoving party

26   does not have enough evidence of an essential element to carry its ultimate burden of persuasion

27   at trial."  Id.

28   / / /

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Federal Rule of Civil Procedure 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. at 248 (1986) ("summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

In resolving the summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Federal Rule of Civil Procedure 56(c).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

### III.

### DISCUSSION

**A.     Plaintiff's Eighth Amendment Claims Against Defendants**

Defendants argue that they are entitled to summary judgment with respect to Plaintiff's Eighth Amendment claims.  Defendants contend that there is no evidence that any of the

9

1    Defendants acted with deliberate indifference toward Plaintiff.  (Defs.' MSJ 7:7-8.)

2            1.       Legal Standards For Eighth Amendment Claims

3            The Eighth Amendment prohibits the imposition of cruel and unusual punishments and

4    "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'"

5    Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th

6    Cir. 1968)).  A prison official violates the Eighth Amendment only when two requirements are

7    met: (1) the objective requirement that the deprivation is "sufficiently serious," and (2) the

8    subjective requirement that the prison official has a "sufficiently culpable state of mind."  Farmer

9    v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

10           The objective requirement that the deprivation be "sufficiently serious" is met where the

11   prison official's act or omission results in the denial of "the minimal civilized measure of life's

12   necessities."   Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).   The subjective

13   "sufficiently culpable state of mind" requirement is met when a prison official acts with

14   "deliberate indifference" to inmate health or safety.  Id. (quoting Wilson, 501 U.S. at 302-303).

15   A prison official acts with deliberate indifference when he/she "knows of and disregards an

16   excessive risk to inmate health or safety."  Id. at 837.  "[T]he official must both be aware of facts

17   from which the inference could be drawn that a substantial risk of serious harm exists, and he

18   must also draw the inference."  Id.

19           To maintain an Eighth Amendment claim based on prison medical treatment, an inmate

20   must (1) show a serious medical need by demonstrating that failure to treat a prisoner's condition

21   could result in further significant injury or the unnecessary and wanton infliction of pain, and (2)

22   a deliberately indifferent response by defendant.  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir.

23   2006).  The deliberate indifference standard is met by showing (a) a purposeful act or failure to

24   respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference.  Id.

25   However, "a complaint that a physician has been negligent in diagnosing or treating a medical

26   condition does not state a valid claim of medical mistreatment under the Eighth Amendment.

27   Medical malpractice does not become a constitutional violation merely because the victim is a

28   prisoner."  Estelle, 429 U.S. at 106.  Isolated occurrences of neglect do not constitute deliberate

10

1   indifference to serious medical needs.  See Jett, 439 F.3d at 1096; O'Loughlin v. Doe, 920 F.2d

2   614, 617 (9th Cir. 1990).

3           2.       Eighth Amendment Claim Against Defendant Kyle

4           Defendants argue that there is no evidence that Kyle purposefully ignored or failed to

5   respond to Plaintiff's pain or medical needs.  (Defs.' MSJ 8:8-9.)  Kyle did not believe Plaintiff's

6   eye sight placed him at risk of injury by being in a top bunk.  (Defs.' MSJ 8:22-27.)

7               i.       Kyle's Treatment of Plaintiff's Hand Injury

8           Plaintiff fails to establish a genuine issue of material fact with respect to the second prong

9   of his Eighth Amendment claim against Kyle regarding the treatment of Plaintiff's hand.  Plaintiff

10  fails to identify evidence that reasonably supports the conclusion that Kyle possessed subjective

11  awareness that his actions or failure to act would subject Plaintiff to serious harm.

12          Plaintiff argues that Kyle acted with deliberate indifference because he "diagnosed

13  Plaintiff's injury, started a course of treatment, and knowingly failed to finish that course of

14  treatment."  (Pl.'s Mem. Of P. & A. in Supp. Of Pl.'s Opp'n to Defs.' Mot. For Summ. J. ("Pl.'s

15  Opp'n") 31:15-17.)  Plaintiff also contends that Kyle "knew that if he didn't treat Plaintiff's hand

16  injury it would get worse."  (Pl.'s Opp'n 31:20-21.)

17          The facts cited by Plaintiff suggest that Kyle ordered treatment, but Plaintiff did not

18  receive treatment.  However, in order to prevail on his Eighth Amendment claim, it is not enough

19  for Plaintiff to prove that Kyle failed to ensure that Plaintiff's right hand was appropriately

20  treated.  Plaintiff must prove that Kyle knew that Plaintiff would not receive the treatment Kyle

21  ordered (x-rays) and actually made the inference that a serious threat of harm would result.

22  Nothing in the record supports the conclusion that Kyle knew Plaintiff would not receive the

23  treatment ordered by Kyle.

24          Plaintiff attempts to rely on his own declaration, wherein Plaintiff states that "Dr. Kyle

25  had personal knowledge that [Plaintiff] never finished the course of treatment he stated for

26  Plaintiff's injured right hand."  (Pl.'s Separate Book of Exhibits 63-64.)  However, Plaintiff fails

27  to demonstrate how Plaintiff has personal knowledge and is competent to testify about what Kyle

28  knew.  Fed. R. Evid. 601, 602; Fed. R. Civ. Proc. 56(c)(4) (declaration used to oppose summary

1   judgment must be made on personal knowledge and show that declarant is competent to testify on

2   matters stated); see also Self-Insurance Institute of America, Inc. v. Software and Information

3   Industry Ass'n, 208 F. Supp. 2d 1058, 1063 (C.D. Cal. 2000) (on motion for summary judgment,

4   refusing to consider testimony regarding the state of mind of others where the declarant fails to

5   provide sufficient foundation).   Accordingly, Plaintiff's testimony regarding Kyle's state of mind

6   is insufficient to establish a genuine issue of material fact.   Fed. R. Evid. 601, 602; Fed. R. Civ.

7   Proc. 56(c)(4).

8                    ii.      Kyle's Refusal to Issue A Lower Bunk Chrono

9        Plaintiff fails to establish a genuine issue of material fact with respect to the second prong

10  of his Eighth Amendment claim against Kyle regarding the issuance of a lower bunk chrono.

11  Plaintiff fails to identify evidence that reasonably supports the conclusion that Kyle believed

12  Plaintiff was in substantial risk of serious harm without a lower bunk chrono.

13       Plaintiff contends there was "clear medical indication that a lower bunk chrono is

14  necessary…. It is obvious even to a person untrained in the medical profession that climbing on

15  and off a top bunk with no ladder, or safety rail, for a[n] inmate with a diagnosed vision problem,

16  acute neck strain, left ankle injury, right hand injury, and back injury, poses a risk to that inmate's

17  health and safety." (Pl.'s Opp'n 33:16-23.)

18       With respect to Kyle's deliberate indifference and state of mind, Plaintiff admits that he

19  has no evidence to support the conclusion that Kyle believed there was a risk of harm to Plaintiff.

20  Defendants' Undisputed Fact Number 28 states that, in Kyle's professional opinion, refusing to

21  write a lower bunk chrono did not subject Plaintiff to any risk of harm.   Defendants cite Kyle's

22  declaration in support of this fact.   Plaintiff does not cite any evidence opposing this fact, but

23  instead objects on the basis that "[t]his is not a fact, this is a[n] opinion by Dr. Kyle which

24  Plaintiff cannot obtain information to dispute or confirm." (Pl.'s Resp. to Defs.' SUF 14:16-18.)

25  While it is true that Dr. Kyle's diagnosis is his own opinion, proving Kyle's opinion and state of

26  mind is also a necessary element in Plaintiff's Eighth Amendment claim.   In order to prevail,

27  Plaintiff must prove that Kyle held the opinion that refusing to provide a lower bunk chrono was a

28  substantial risk to Plaintiff's health and safety.   See Toguchi, 391 F.3d at 1057 ("the prison

1  official must not only 'be aware of facts from which the inference could be drawn that a

2  substantial risk of serious harm exists,' but that person 'must also draw the inference.'")   If

3  Plaintiff has no evidence to dispute Kyle's testimony regarding his own state of mind, Plaintiff

4  cannot prevail and summary judgment must be entered in favor of Kyle.

5      Generally, in cases involving medical opinions, a plaintiff "must show that the chosen

6  course of treatment 'was medically unacceptable under the circumstances' and was chosen 'in

7  conscious disregard of an excessive risk to [the prisoner's] health.'"   Toguchi v. Chung, 391 F.3d

8  1051, 1058 (9th Cir. 2004) (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)).

9  While Plaintiff repeatedly asserts that it was obvious that his impaired eyesight could have caused

10  him to fall in the future, that is not the relevant inquiry under the second prong of the Eighth

11  Amendment analysis.  Plaintiff cannot merely prove that Kyle should have been aware of a risk to

12  Plaintiff's safety, Plaintiff must prove Kyle actually believed there was a substantial risk to

13  Plaintiff's safety.  Toguchi, 391 F.3d at 1057; Farmer, 511 U.S. at 837.

14      The only admissible evidence in the record is the fact that Kyle was aware that Plaintiff

15  needed glasses and was aware that Plaintiff fell off his top bunk on one occasion and fell down

16  some stairs on a second.  While this evidence is probative, it is not sufficient to establish a

17  genuine issue for trial.  Kyle's declaration recounts Plaintiff's objective visual acuity test results

18  and the basis for Kyle's medical opinion that a person with Plaintiff's eyesight impairments did

19  not present an emergency or substantial risk to their own health and safety.  (Decl. of D. Kyle in

20  Supp. Of Mot. For Summ. J. ¶ 3.)  The only other opinion on record from a physician is from

21  Defendant Nguyen, who concurred with Kyle's medical assessment.  (See Decl. of K. Nguyen in

22  Supp. Of Mot. For Summ. J. ¶¶ 4-5.)  Plaintiff fails to cite any contradictory testimony from a

23  witness qualified to opine on the appropriateness of Plaintiff's medical care.  The fact that

24  Plaintiff fell down before is not sufficient enough such that a reasonable jury could find that Kyle

25  is lying and actually believed there was a substantial risk to Plaintiff's health and safety.  No

26  reasonable fact finder would conclude that Kyle believed there was a substantial risk of serious

27  harm because Plaintiff needed glasses.

28  / / /

1        Accordingly, Plaintiff fails to create a genuine issue of material fact with respect to his

2   Eighth Amendment claims against Kyle.

3           3.     <u>Eighth Amendment Claim Against Defendant Nguyen</u>

4        Defendants argue that there is no evidence that Nguyen was deliberately indifferent

5   toward Plaintiff's medical needs.  (Defs.' MSJ 9:15-16.)  Defendants note that Nguyen examined

6   Plaintiff twice, sent Plaintiff to an outside hospital for evaluation, prescribed medications, ordered

7   an x-ray and requested a referral to an orthopedic specialist.  (Defs.' MSJ 9:17-21.)  Nguyen also

8   reviewed Dr. Deering's evaluation of Plaintiff's vision and did not believe Plaintiff's eye sight

9   placed him at risk of injury.  (Defs.' MSJ 9:21-10:2.)

10       Plaintiff argues that Nguyen should have issued Plaintiff a lower bunk chrono because

11  Nguyen was aware that Plaintiff fell off his bunk and fell down a flight of stairs.  (Pl.'s Opp'n

12  38:6-18.)  Plaintiff contends that "[t]he medical indication for a lower bunk chrono is clear to

13  even a lay person."  (Pl.'s Opp'n 38:26-28.)  However, the Court finds that Plaintiff failed to

14  establish a genuine issue of material fact for the same reasons discussed above, with respect to

15  Defendant Kyle.  <u>See</u> discussion, <u>supra</u>, Part III.A.2.  Moreover, Nguyen's opinion was supported

16  by the fact that Plaintiff's test results for double vision came back normal.  (Decl. of K. Nguyen

17  in Supp. of Mot. For Summ. J. ¶ 4.)  The overwhelming weight of evidence supports the

18  conclusion that Nguyen did not believe that Plaintiff's eyesight posed a substantial risk of serious

19  injury.

20       Accordingly, Plaintiff fails to raise a genuine issue of material fact with respect to his

21  Eighth Amendment claim against Defendant Nguyen.

22          4.     <u>Eighth Amendment Claim Against Defendant Smith</u>

23       Defendants argue that there is no evidence that Smith was deliberately indifferent toward

24  Plaintiff's medical needs.  (Defs.' MSJ 10:7-8.)  Smith reviewed two of Plaintiff's administrative

25  appeals and, notably, Plaintiff did not complain about being on a top bunk in either appeal.

26  (Defs.' MSJ 10:8-13.)  Smith also saw nothing wrong with the evaluations or treatments provided

27  by Plaintiffs' doctors.  (Defs.' MSJ 10:10-16.)

28  / / /

Plaintiff contends that Smith "chose not to do any investigation to make a reasonable judgment as to whether Plaintiff's health or safety was at risk." (Pl.'s Opp'n 43:9-12.) However, Plaintiff fails to identify anything in Plaintiff's medical record or in the appeals submitted to Smith that would have raised any serious questions about the treatment Plaintiff received. Plaintiff relies on the argument that it should have been obvious to anyone reviewing the record that it was improper to house an inmate on a top bunk when his vision was impaired and he had suffered previous falls. The objective medical evidence and undisputed medical testimony suggests otherwise. See discussion supra Part III.A.2. Two physicians opined that Plaintiff's objective vision acuity test results and double vision test results showed that Plaintiff was not in any substantial risk of serious harm. Plaintiff fails to present any evidence that supports a contradictory interpretation of Plaintiff's objective medical record.

Accordingly, Plaintiff fails to raise a genuine issue of material fact with respect to his Eighth Amendment claim against Defendant Smith.

5.    Eighth Amendment Claim Against Defendant Vierra

Defendants argue that there is no evidence that Vierra was deliberately indifferent toward Plaintiff's serious medical needs. (Defs.' MSJ 10:24-25.) Defendants argue that Vierra was not authorized to give Plaintiff medication and had no control over whether Plaintiff was seen by a doctor. (Defs.' MSJ 11:2-4.) Defendants further argue that, at most, Plaintiff was deprived of extra Ibuprofen for two days because, based upon his medical record, Plaintiff was receiving Ibuprofen, but was allegedly supposed to receive an extra dose that he did not receive over a two day period. (Defs.' MSJ 11:15-28.)

Plaintiff contends that he personally heard Vierra inform an unnamed on-call nurse that Plaintiff would receive temporary pain medication and would be placed on the med line list. (Pl.'s Opp'n 49:24-50:1.) However, even assuming that Vierra lied and had no intention of providing the temporary pain medication or placing Plaintiff on the med line list, Plaintiff fails to cite sufficient evidence to create a genuine issue of material fact with respect to the first prong of the Eighth Amendment analysis, whether Plaintiff had a serious medical need.

/ / /

Plaintiff admits that the medication was temporary and fails to rebut Defendants' contention that it amounted to two pills of Ibuprofen over two days.  Moreover, Plaintiff's declaration submitted in opposition to Defendants' motion for summary judgment states that he was allegedly told by Vierra that he would receive temporary pain medication on February 2, 2004 and, after complaining that he was not receiving pain medication, was told on February 4, 2004 by a medical technical assistant that he would receive pain medication "immediately." (Pl.'s Separate Book of Exhibits 68-69.)  Accordingly, the record appears to be consistent with Defendants' contention that Plaintiff, at most, was deprived of two days of non-prescription strength[9] temporary medication.  Failure to provide Ibuprofen for two days does not constitute a serious medical need.  Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990) (delay in treatment does not violate Eighth Amendment unless it causes substantial harm); Van Court v. Lehman, 137 Fed. Appx. 948, 950 (9th Cir. 2005) (one day delay in receiving pain medication not sufficient to demonstrate deliberate indifference to a serious medical need).  The evidence submitted by Plaintiff does not reveal any other serious medical reason to see a doctor on February 2, 2004.

Accordingly, Plaintiff fails to raise a genuine issue of material fact with respect to his Eighth Amendment claim against Defendant Vierra.

6.   Eighth Amendment Claim Against Defendants Divine, Martinez and Adams

Defendants argue that there is no evidence that Defendants Divine or Martinez were deliberately indifferent to Plaintiff's medical needs.  (Defs.' MSJ 12:3-5.)  Defendants note that Divine and Martinez were only responsible for ensuring that Plaintiff received adequate due process during the review of his administrative appeals and neither had any direct role in providing Plaintiff with medical treatment.  (Defs.' MSJ 12:14-17.)

Defendants also argue that there is no evidence that Adams was deliberately indifferent to Plaintiff's medical needs.  (Defs.' MSJ 13:3-4.)  Defendants argue that Adams cannot be held

---

[9] The fact that the pain medication was non-prescription strength can be inferred from the fact that Plaintiff contends that a non-physician should have provided it to him.

liable solely as a consequence of his supervisory position as the warden of SATF.  (Defs.' MSJ 13:7-23.)

Plaintiff argues that Divine, Martinez and Adams are liable because they reviewed Plaintiff's administrative appeals and were thereby informed that Plaintiff's medical needs were being ignored.  (Pl.'s Opp'n 52:1-59:28.)   As discussed above, Plaintiff fails to establish a genuine issue of material fact with respect to the medical care provided by his physicians and medical assistants.  See discussion, supra, Part III.A.2-5.  Having already rejected Plaintiff's argument that his prior falls should have put Defendants on notice that Plaintiff faced a substantial risk of serious harm, nothing else in the record suggests that Divine or Martinez had any reason to believe that the medical care Plaintiff received was inappropriate or that Plaintiff was at risk of serious injury.

Accordingly, Plaintiff fails to raise a genuine issue of material fact with respect to his Eighth Amendment claims against Defendants Divine, Martinez and Adams.

7.     Eighth Amendment Claim Against Defendant Suryadevara

Defendants argue that there is no evidence that Suryadevara was deliberately indifferent toward Plaintiff's medical needs.  (Defs.' MSJ 13:3-4.)   Defendants state that, during his deposition, Plaintiff admitted that he had no claims against Suryadevara.  (Defs.' MSJ 13:4-6.)

In his opposition, Plaintiff fails to address his claims against Suryadevara.  Accordingly, Plaintiff has failed to present any evidence that would establish a genuine issue of material fact with respect to deliberate indifference on Suryadevara's part.

**B.     Plaintiff's State Law Claims**

Defendants argue that Plaintiff's state law claims are untimely because Plaintiff failed to timely comply with the claims presentation procedures under the California Tort Claims Act (the "Claims Act").  (Defs.' MSJ 14:21-22.)

1.     California's Government Tort Claims Act And Statute of Limitations

Under the Claims Act, Plaintiff is required to file a claim for money damages with the Victim Compensation and Government Claims Board prior to initiating a lawsuit against state employees.  Cal. Gov't Code §§ 810, et seq.  The claim must be submitted within six months of

1    the accrual of the cause of action.  Cal. Gov't Code § 911.2.  Moreover, under California's statute

2    of limitations, the lawsuit must be filed within six months after rejection of the claim.  Cal. Gov't

3    Code § 945.6.  Under California law, compliance with the Claims Act is an element of Plaintiff's

4    state law causes of action.  State of California v. Superior Court, 32 Cal. 4th 1234, 1239-40

5    (2004).

6         Defendants contend that Plaintiff's state law claims are untimely for two reasons.  First,

7    Plaintiff failed to file a claim with the Board within six months.  (Defs.' 15:13-16.)  The Board

8    received Plaintiff's claim on February 3, 2005, which would make any claim that accrued more

9    than six months prior (August 3, 2004) untimely.  (Defs.' 15:16-20.)  Second, Plaintiff's claim

10   was rejected by the Board on March 30, 2005, which required Plaintiff to file suit by September

11   30, 2005.  (Defs.' 15:21-25.)  Plaintiff's claim in this action was filed June 29, 2006—fifteen

12   months after service of the rejection notice.

13        2.    Equitable Estoppel

14        Plaintiff contends that he attempted to file on time, but prison officials tampered with his

15   mail.  (Pl.'s Opp'n 61:18-63:21.)  Plaintiff claims he attempted to file a claim with the Board on

16   February 4, 2004.  (Pl.'s Opp'n 63:4-6.)  Plaintiff also claims that he attempted to file a complaint

17   in state court first on June 27, 2005 and then continued to attempt to file a total of eight separate

18   times.   (Pl.'s Opp'n 62:6-12.)   Plaintiff accuses "agents of the Defendants" of intercepting

19   Plaintiff's filings and preventing them from being sent in the mail.  (Pl.'s Opp'n 62:17-20.)

20        Plaintiff attaches a prison mail log as proof that Plaintiff timely filed his claim with the

21   Board and the complaint with the court.  (Pl.'s Sep. Book of Exhibits 137-138.)  The log appears

22   to show that Plaintiff sent mail to "STATE BOARD OF" in Sacramento, California on February

23   4, 2004.  (Pl.'s Sep. Book of Exhibits 137.)  Plaintiff also sent mail to "SUPERIOR COURT" in

24   Hanford, California on June 27, 2005.  (Pl.'s Sep. Book of Exhibits 137.)  The log contains no

25   information regarding the contents of Plaintiff's mailings.

26        In their reply, Defendants argue that, even if Plaintiff's contentions are to be believed, his

27   February 4, 2004 filing with the Board would have only covered the events that took place before

28   then, which only pertain to Defendants Kyle, Nguyen and Vierra.  (Defs.' Reply Brief in Supp. Of

Mot. For Summ. J. ("Defs.' Reply") 8:17-19.)   Accordingly, Plaintiff failed to comply with the Claims Act with respect to any claims that occurred after February 4, 2004.   Defendants also argue that Plaintiff failed to allege any facts which would toll the statute of limitations or estop Defendants from asserting that defense.   (Defs.' Reply 9:26-10:20.)   Defendants note that the doctrine of equitable estoppel requires a plaintiff to demonstrate that the parties to be estopped intentionally prevented Plaintiff from filing a lawsuit.   (Defs.' Reply 9:5-15.)   Defendants argue that Plaintiff fails to allege that any particular defendant prevented Plaintiff from filing, and it is especially unclear how the doctors and appeal reviewers named as defendants could have played any role in processing Plaintiff's mail.   (Defs.' Reply 9:11-17.)

The equitable estoppel doctrine operates to preclude a defendant from asserting the statute of limitations as a defense.   Lukovsky v. City and County of San Francisco, 535 F.3d 1044, 1051 (9th Cir. 2008).   Equitable tolling, also referred to as "fraudulent concealment," applies when a defendant prevents a plaintiff from filing suit.   Id.   Under California law,[10] equitable tolling requires: (1) the party to be estopped must be apprised of the facts, (2) the party must intend that his or her conduct be acted on, or must so act that the party asserting the estoppel had a right to believe it was so intended, (3) the party asserting the estoppel must be ignorant of the true state of facts, and (4) the party asserting the estoppel must reasonably rely on the conduct to his or her injury.   Id. At 1051-52 (citing Honig v. San Francisco Planning Dep't, 127 Cal. App. 4th 520, 529 (2005)).

Since Plaintiff failed to timely file a government claim concerning the actions that occurred after February 4, 2004, the Court finds that Plaintiff failed to comply with the Claims Act requirements with respect to any claims based on events occurring after February 4, 2004. Therefore, according to the undisputed facts, Plaintiff failed to exhaust his claims against Defendants Adams, Martinez, Suryadevara, Smith and Divine.   Those defendants are entitled to

---

[10] Federal courts addressing state law claims must apply state law statutes of limitation and state law applies to the question of tolling state claims.   Walker v. Armco Steel Corp., 446 U.S. 740, 745-53 (1980); Guaranty Trust Co. v. York, 326 U.S. 99, 107-110 (1945); Centaur Classic Convertible Arbitrage Fund Ltd. V. Countrywide Financial Corp., 878 F. Supp. 2d 1009, 1015 (C.D. Cal. 2011).

summary judgment on Plaintiff's state law claims due to Plaintiff's failure to comply with the Claims Act.

With respect to Plaintiff's remaining state law claims against Defendants Kyle, Nguyen and Vierra, Plaintiff's attempt to raise the equitable estoppel doctrine fails for a number of reasons. First, equitable estoppel requires Defendants to be apprised of the facts. Plaintiff's vague excuse fails to allege any facts that plausibly support the conclusion that Defendants Kyle, Nguyen or Vierra were apprised of the fact that the officials who took custody of Plaintiff's mail were preventing the mail from being sent to the Board or to the Court. There is no explanation as to how two doctors or a medical assistant were in any way involved in intercepting Plaintiff's mail.

Second, Plaintiff fails to allege facts which plausibly support the conclusion that Kyle, Nguyen or Vierra intentionally acted to prevent Plaintiff from filing on time. Plaintiff fails to identify any specific acts by Kyle, Nguyen or Vierra related to the handling of Plaintiff's mail.

Third, equitable estoppel requires Plaintiff to be ignorant of the true state of facts. Plaintiff fails to offer a plausible explanation for why it took Plaintiff a full year to get his complaint filed or why Plaintiff did not realize earlier that his filings were not reaching the courts.

Finally, Plaintiff bears the burden of pleading the elements of equitable estoppel. Estate of Amaro v. City of Oakland, 653 F.3d 808, 813 (9th Cir. 2011). The facts pertaining to equitable estoppel were not properly pled in any of the four complaints Plaintiff filed or lodged in this matter.

Based upon the foregoing, the Court finds that the doctrine of equitable estoppel does not prevent Defendants from asserting the statute of limitations defense. Further, the Court finds that Plaintiff's complaint was untimely because the relevant statute of limitations required Plaintiff to file his lawsuit within six months of the Board's March 30, 2005 rejection of Plaintiff's claim. Defendants are entitled to summary judgment with respect to Plaintiff's state law claims.

C.     **Qualified Immunity**

Based on the analysis set forth above, Defendants are entitled to summary judgment on all of Plaintiff's claims. Accordingly, the Court declines to address the qualified immunity

arguments raised in Defendants' motion.

## IV.

### CONCLUSIONS AND RECOMMENDATIONS

For the reasons set forth above, the Court finds that Plaintiff fails to establish a genuine issue of material fact with respect to his Eighth Amendment claims against Defendants.  Further, the Court finds that Plaintiff failed to comply with the Claims Act and file his remaining state law claims prior to the expiration of the statute of limitations.  Accordingly, the Court finds that summary judgment in favor of Defendants is appropriate on all of Plaintiff's claims.

Based on the foregoing, the Court HEREBY RECOMMENDS that Defendants' motion for summary judgment be GRANTED.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one (21) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten (10) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   __February 6, 2013__                 _____ /s/ Stanley A. Boone
                                                                 UNITED STATES MAGISTRATE JUDGE

21